1  Alison Torbitt (Bar No. 271654)
   atorbitt@nixonpeabody.com
2  Dawn N. Valentine (Bar No. 206486)
   dvalentine@nixonpeabody.com
3  NIXON PEABODY LLP
   One Embarcadero Center
4  San Francisco, California 94111-3600
   Tel: (415) 984-8200
5  Fax: (415) 984-8300

6  Stratton Constantinides (Bar No.305103)
   sconstantinides@nixonpeabody.com
7  NIXON PEABODY LLP
   300 South Grand Avenue, Suite 4100
8  Los Angeles, CA 90071-3151
   Tel: (213) 629-6000

9
   Attorneys for Plaintiff
10 *SHP Quito Village, LLC*

11

12          **IN THE UNITED STATES DISTRICT COURT**

13          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14

15 SHP QUITO VILLAGE, LLC                    Case No.:

16                          Plaintiff,       **COMPLAINT FOR:**

17          v.                               **(1) RCRA §7002(a)(1)(B)**
                                             **(2) CERCLA §107(a)**
18 JIN HO YI, an individual and SANG        **(3) CERCLA §113(f)**
   HOON YI, an individual, dba ELITE        **(4) Public Nuisance**
19 CLEANERS, QUITO CLEANERS,                **(5) Private Nuisance**
   QUITO DRY CLEANERS, QUITO PARK           **(6) Trespass**
20 CLEANERS, QUITO PARK DRY                 **(7) Breach of Contract**
   CLEANERS, ESTATE OF ALFRED T.            **(8) Negligence**
21 FICHERA, DECEASED, an                    **(9) Ultrahazardous Activity**
   individual, and ESTATE OF                **(10) Statutory Indemnity under HSAA**
22 VIRGINIA M. FICHERA,                     **(11) Declaratory Relief**
   DECEASED, an individual
23
   DOES 1-50,
24
                          Defendants.       **DEMAND FOR JURY TRIAL**
25

26

27          Plaintiff SHP Quito Village, LLC ("SHP Quito" or "Plaintiff"), by and through its

28 undersigned attorneys, brings this Complaint against Defendants Jin Ho Yi and Defendant San

COMPLAINT

Hoon Yi, (collectively referred to herein as "Defendants") both of whom did business as Elite Cleaners, Quito Cleaners, Quito Dry Cleaners, Quito Park Cleaners, and Quito Park Dry Cleaners, and Defendant the Estate of Alfred T. Fichera, deceased, an individual and Defendant, the Estate of Virginia M. Fichera, deceased, an individual both of whom were the prior owners and operators of the drycleaning business sold to the Defendants Jin Ho Yi and San Hoon Yi and Does 1 through 50 , as follows:

## JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over SHP Quito's federal law causes of action pursuant to 28 U.S.C. § 1331, and over causes of action brought under the Resource Conservation and Recovery Act ("RCRA") § 7002(a), 42 U.S.C. § 6972 (a), and under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") § 107(a), 42 U.S.C. § 9607(a), and under the Declaratory Judgment Act, 28 U.S.C. § 2201 and CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2).

2.     The Court has supplemental jurisdiction over SHP Quito's state law causes of action pursuant to 28 U.S.C. § 1367 since they are so related to the federal claims in this action that they are part of the same case and controversy under Article III of the U.S. Constitution. Furthermore, considerations of judicial economy, convenience and fairness to the parties require the claims be tried together in one jurisdictional proceeding.

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the acts complained of herein occurred in this judicial district and Defendants are subject to personal jurisdiction herein.

## NATURE OF THE ACTION

4.     SHP Quito is the owner and lessor of Quito Village Shopping Center located at 18764 Cox Avenue and is the former owner and developer of the adjacent, larger property,

4891-1607-2288.1

located at 18764-18850 Cox Avenue, in Saratoga, California (collectively "the Property"). The Property is in the process of redevelopment as a mixed-use townhome project. This dispute concerns environmental contaminants that were discovered during the redevelopment process in, on, under and around the Property resulting from Defendants' activities. Defendants operated as a dry cleaner doing business as Elite Cleaners, Quito Cleaners, Quito Dry Cleaners, Quito Park Cleaners, and/or Quito Park Dry Cleaners, each located on or around 18808 Cox Avenue, Saratoga, California (collectively, "Dry Cleaner"). SHP Quito seeks response costs, a cleanup order, declaratory relief, breach of contract and related damages and costs of suit (including attorney and expert witness fees) as a result of Defendants' unlawful release, disposal, dumping, and abandonment of hazardous waste from their Dry Cleaner that remain in the soil and soil vapor and which continue to migrate through the Property, presenting an imminent and substantial endangerment to health and the environment. SHP Quito has already incurred costs for the investigation, removal and remediation of the released contaminants and those costs are Defendants' legal responsibility.

## **PARTIES**

5.      Plaintiff SHP Quito Village, LLC is a limited liability company formed in the state of Delaware with a principal place of business in California.

6.      Defendant Jin Ho Yi is an individual who, on information and belief, resides in San Jose, California. Jin Ho Yi is the former owner and operator of the Dry Cleaner in Saratoga, California.

7.      Defendant Sang Hoon Yi is an individual who, on information and belief, resides in Santa Clara, California. San Hoon Yi is the former owner and operator of the Dry Cleaner in Saratoga, California.

4891-1607-2288.1

8.      Defendant, the Estate of Alfred T. Fichera, deceased, is named as a defendant herein to the extent that insurance assets may be accessed pursuant to California Probate Code §§550 through 555 to meet the deceased's responsibility covered by liability insurance policies. Alfred T. Fichera is an individual who operated a dry-cleaning business at the Quito Shopping Center from approximately 1962 to 1977 before selling it to Co-Defendants, Jin Ho Yi and Sang Hoon Yi.

9.      Defendant, the Estate of Virginia M. Fichera, deceased, is named as a defendant herein to the extent that insurance assets may be accessed pursuant to California Probate Code §§550 through 555 to meet the deceased's responsibility covered by liability insurance policies. Virginia M. Fichera is an individual who operated a dry-cleaning business at the Quito Shopping Center from approximately 1962 to 1977 before selling it to Co-Defendants, Jin Ho Yi and Sang Hoon Yi.

10.     On information and belief, SHP Quito alleges that there is such a unity of interest and ownership between Defendants and the Dry Cleaner that the separate personalities of the business entities and Defendants does not exist in reality, and it would be inequitable if the acts in question were treated as those of the business entities alone.

11.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Does 1 through 50 are unknown to Plaintiff at this time, and Plaintiff's claims are asserted against them using fictitious names. Plaintiff is also informed and believes that at all relevant times, Defendants and Does 1 through 50, inclusive, and each of them were the agents, employees, and/or alter egos of the other, and in doing the things herein alleged, each defendant was acting within the scope and course of their agency and authority and was subject to and under the supervision and control of each co-defendant.  When the true names and capacities of said Doe Defendants have been ascertained, Plaintiff will amend this Complaint pursuant to Federal Rules of Civil Procedure 15(a)(2) and 21.

4891-1607-2288.1

## VENUE

12.     Venue is proper in this Court pursuant to CERCLA §113(b), 42 U.S.C. § 9613(b), because the releases and damage at issue in this action occurred in this judicial district. Venue is also proper in this Court pursuant to RCRA § 7002 (a), 42 U.S.C. § 6972 (a), and 28 U.S.C. §1391 (b), because the actual and threatened endangerment, injury, and damage at issue are taking place in this judicial district.

## NOTICE

13.     In accordance with RCRA, 42 U.S.C. §6972(b)(2)(A), on or about April 30, 2021, Plaintiff provided notice to Defendants, the United States Environmental Protection Agency ("USEPA") and the California Environmental Protection Agency ("CalEPA") (both directly and through CalEPA's Department of Toxic Substances Control ("DTSC")) of the actual and threatened endangerment, injury, and damages described herein, and of its intent to bring suit against Defendants.

14.     Plaintiff waited at least 90 days after Defendants, the USEPA and the CalEPA, received the notice of endangerment and of intent to file suit before filing this action.

15.     Neither the USEPA or the CalEPA has commenced or is diligently prosecuting an action under RCRA or CERCLA related to the Property.

16.     Plaintiff has satisfied all jurisdictional prerequisites to filing this action.

## GENERAL ALLEGATIONS

### *The Site*

17.     In addition to "Property" as defined above, "the Site" refers to and is comprised of the Property and the residential off-Property homes in the vicinity of the Property that have been, or are threatened with being impacted, by the environmental contaminants at issue in this litigation.

4891-1607-2288.1

*Operational History at the Property*

18.     SHP Quito is informed and believes that Defendants' family acquired the Dry Cleaner, which operated on the Property beginning on or about 1977, and that Defendants operated the Dry Cleaner continuously until on or about May 2020. SHP Quito is informed and believes that the dry cleaning machines operated by Defendants utilized the solvent tetrachloroethylene ("PCE") from at least 1977 until new dry cleaning machines were purchased in 2009, at which time the new dry cleaning machines used a hydrocarbon solvent in place of the PCE. SHP Quito contends that the Defendants' operation of the Dry Cleaner resulted in PCE being released into the soil and soil vapor at the Property and Site.

19.     In addition to PCE, SHP Quito is informed and believes that Defendants' operation of the Dry Cleaner utilized other chemicals common in the dry cleaning industry, both as direct use chemicals and as byproducts, including without limitation benzene, and ethylbenzene (collectively, with PCE, the "Contaminants").  Plaintiff is informed and believes that the Defendants, and each of them, stored and used, allowed the storage and use, or authorized the storage and use of the Contaminants.  Plaintiff is informed and believes and on that basis alleges that Defendants handled these Contaminants in places including but not limited to: drums, pails sewer lines, concrete gutters, ditches, underground sumps, waste water interceptors, clarifiers, dry cleaning machines, tanks, piping, and containers, which allowed the release of the Contaminants at the Property.  The Contaminants that Defendants released into the soil and soil vapor from the Dry Cleaner constitutes hazardous or solid waste as defined in 42 U.S.C. §§ 6903(5) and 6903(27).

20.     SHP Quito is informed and believes that each Defendant had a substantial role in the ownership and control of the Dry Cleaner operated at the Property from 1977 to May of 2020, and in the management and operations of that Dry Cleaner as, for instance, officers, directors, managers, and/or shareholders of the business.

21.     SHP Quito is informed and believes and on that basis alleges that each individual Defendant was the alter ego of the Dry Cleaner that operated during the relevant time period on

4891-1607-2288.1

the Property because, *inter alia*, of their controlling interest in the Dry Cleaner, their complete dominance and control over the Dry Cleaner, and their failure to follow and adhere to the formalities required such that no separateness or individuality between them and the business entities existed. Therefore, failure to hold the individual Defendants liable in lieu of or in addition to the Dry Cleaner would result in injustice and prejudice to SHP Quito.

22.     SHP Quito is informed and believes that each Defendant exercised substantial influence and control over the operations of the Dry Cleaner at the Property, including over the business's use, handling, storage, disposal, transportation, and release of the Contaminants.

### *Contamination*

23.     Environmental investigations confirmed the release of PCE from the Dry Cleaner immediately outside of the building to the south of the Dry Cleaner.  Testing established PCE in the soil vapor of 13,000 micrograms per cubic meter ($\mu g/m^3$).  Thus, occurrence of PCE at the Property significantly exceeded the limit for PCE in soil vapor of 15 $\mu g/m^3$ set under the 2019 Environmental Screening Level ("ESL") of the San Francisco Bay Regional Water Quality Control Board.

24.     Specifically, in June 2020, soil vapor sampling indicated concentrations of PCE at 2,400 $\mu g/m^3$ and 3,800 $\mu g/m^3$ immediately outside of the building to the south of the Dry Cleaner, which greatly exceeded the ESL of 15 $\mu g/m^3$.

25.     In August 2020, soil vapor testing results indicated elevated concentrations of PCE at multiple locations at both 5 and 15 feet below ground surface (bgs) throughout the Property, with the highest soil vapor results of 13,000 $\mu g/m^3$ located at 5 feet bgs immediately outside of the building to the south of the Dry Cleaner.

26.     In November 2020, a data gaps analysis showed elevated levels of PCE in soil vapor at multiple locations throughout the Property down to 45 feet bgs, with the highest soil vapor results of 13,000 $\mu g/m^3$ located at 5 feet bgs immediately outside of the building to the south of the Dry Cleaner.

27.     Environmental testing also confirmed that PCE released from the Dry Cleaner

COMPLAINT

4891-1607-2288.1

migrated throughout the Property during the time that the Dry Cleaner operated at the Property. Investigations indicated the Contaminants released by the Dry Cleaner migrated through the Property and to residential neighborhoods surrounding the Property, throughout the time the Dry Cleaner operated at the Property.  The Site required and requires mitigation and remediation under federal and state law.

28.     Prior to the discovery of the Contaminants at the Property, Plaintiff was approved for streamlined residential permitting under the California State Senate Bill 35 and the California State density bonus law, for a project consisting of 90 residential units (with a 10% affordable housing component), 17 buildings, one commercial building and 76,871 ft.$^2$ of open space. This project was delayed due to the discovery of PCE in soil vapor requiring investigation, on-Property mitigation and remediation for the health and safety of the construction workers, future occupants and current neighbors. The Site, including the public right-of-way and surrounding neighborhood, was also impacted by the Contaminants and is now requiring mitigation and remediation for the health and safety of the existing residents living in the neighborhood.

29.     Defendants are solely responsible for the unlawful release, disposal, dumping, and abandonment of hazardous waste that remains in the soil and soil vapor and continues to migrate through the Site.

### *Defendants' Obligations Under its Lease*

30.     Defendants are liable for the contamination at the Property not only under environmental law, but under the operative lease agreement dictating the terms of their tenancy at the Property. The most recent operative lease agreement was entered into between Defendants and Carson Estate Company, Inc., on or about July 1, 2000 and, as amended, was assigned to SHP Quito (lease and amendments collectively referred to as "2000 Lease Agreement").

31.     The 2000 Lease Agreement included the following indemnity provision:

13.4 Indemnification of Owner. Tenant will indemnify Owner, defend and save harmless from and against any and all claims, motions, damages, liability and expense in connection with loss of life, personal injury and/or damage to property or any other claim, action, damages, liability or expense,

- 8 -
COMPLAINT

including attorney's fees arising from or out of any occurrence in, upon or at the leased premises, or the occupancy or use by Tenant of the Leased Premises or any part thereof, or occasioned wholly or in part by any act or omission of Tenant, its agents, contractors, employees, servants, lessees or concessionaires. In case Owner shall be made a party to any litigation commenced by or against Tenant, Tenant shall hold Owner harmless and shall pay all costs, expenses and reasonable attorney's fees incurred or paid by Owner in connection with such litigation.

32.     The 2000 Lease Agreement contains several provisions specifically addressing waste or nuisance:

17.1    Waste or Nuisance.   Tenant shall not commit or suffer to be committed any waste upon the Leased Premises or any nuisance or other act or thing which may be located, or in the Shopping Center, or which may disturb the quiet enjoyment of any person within five hundred feet of the boundaries of the Shopping Center.

17.2    Governmental Regulations. Tennant shall, at Tenant's sole cost and expense, comply with all of the requirements of all city, county, municipal, state, federal and other applicable governmental authorities now in force, or which may hereafter be in force, pertaining to said premises, including the installation of additional facilities as required for the conduct and continuance of tenant's business, and shall faithfully observe in the use of the premises all municipal and county ordinances and state and federal statutes now in force or which may hereafter be in force.

33.     Under the 2000 Lease Agreement, Defendants agreed to be responsible for any environmental contamination resulting from their activities and to indemnify SHP Quito for any damages resulting from their actions or inactions per the following terms:

26.13   Hazardous Materials.
        (a)     Tenant, without the prior written consent of Owner, which consent Owner may give or withhold in its sole discretion, agrees not to use, treat, store, generate, emit, or dispose of and not to suffer or permit anyone else to use, treat, store, generate, emit or dispose of, whether temporarily or permanently, any Hazardous Materials (as hereinafter defined) at home alone, or the need the leased premises…. If Tenant or any Tenant party reaches the obligations stated in the preceding sentences or the presence of Hazardous Materials on the Leased Premises caused or permitted by Tenant's results in contamination of the leased premises, the shopping center or any adjacent property, then Tenant shall indemnify, defend and hold harmless Owner from and against any and all claims, judgments, actions, damages, penalties, fines, forfeitures, costs, expenses, liabilities or losses (including, without limitation, diminish and in value of the premises,

- 9 -

the shopping center and/or adjacent property, damages for loss for restriction on use of rentable or usable space of any amenity of the premises, the shopping center and/or adjacent property, damages arising from any adverse impact on marketing of the premises, the shopping center and/or adjacent property, and sums paid in settlement with Plaintiffs, attorney's fees, consultant food and expert fees and court cost (s) which arise during or after the lease term or any extension thereof, as result of such breach…. As used herein, "Hazardous Materials" shall include, but not be limited to, substances defined as "extremely hazardous substances," "hazardous material," "hazardous waste," or "infectious waste," "toxic waste" or "toxic substances", as defined in all applicable federal, state, and local laws, regulations or ordinances (collectively, "Hazardous Materials Laws").

\*\*\*

(b) … Notwithstanding any consent given, Tenant shall be solely responsible for and shall indemnify, defend, and hold Owner, its officers, directors, employees, and agents harmless from and against any and all losses, costs, damages, claims, and liabilities, including attorneys' fees and costs arising out of or in connection with any removal, clean-up, remediation, and restoration work or materials required to return the Leased Premises to its condition existing prior to contamination of the Leased Premises by Hazardous Material, including any so called state, federal or local "super fund" lien related to the "clean up" of a "Hazardous Material" in, over, on, under, through or about the Leased Premises.

### *Defendants Were Notified of the Contamination*

34.     On or around December 11, 2020, SHP Quito notified Defendants of the Contaminants identified at the Property and reminded Defendants of their obligations under the 2000 Lease Agreement and applicable federal and state law.  SHP Quito received no response. After continued efforts by SHP Quito and its attorneys to communicate with Defendants, without any response, SHP Quito delivered to Defendants a RCRA 90-day Intent-to-Sue letter. Although Defendants responded to that letter, they have refused to indemnify, defend, or hold SHP Quito harmless from and against the damages, costs, expenses, liabilities and losses incurred to date, and from future damages, costs, expenses, liabilities and losses anticipated, associated with Defendants' release of Contaminants.

///

///

///

- 10 -

4891-1607-2288.1

# FIRST CAUSE OF ACTION

## RCRA § 7002(a)(1)(B)

### (Against all Defendants)

35.     Plaintiff realleges and incorporates by reference all allegations set forth above as though set forth in full herein.

36.     RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), under which Plaintiff brings this cause of action, is RCRA's citizen suit provision.

37.     Under RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), when a "solid waste" or a "hazardous waste" "may present an imminent and substantial endangerment to health or the environment" and the defendant falls within one of the categories of persons declared liable for abatement of such endangerment, then the plaintiff may obtain injunctive relief against such defendant, may recover its attorneys' fees, and may obtain such other and further relief against such defendant as the court deems just and proper.

38.     The person declared liable to abate such endangerment are persons who contributed to "past or present handling, storage, treatment, transportation, or disposal" of the "solid wastes" and "hazardous wastes" at issue. Those persons include "any past or present generator, past or present transporter, or past or present owner operator of the treatment, storage, or disposal facility."

39.     Each Defendant is a "person" within the meaning of RCRA § 1004 (15), 42 U.S.C. § 6903(15).  Each Defendant is liable to Plaintiff under RCRA § 7002 (b)(2)(B), 42 U.S.C. § 6972 (b)(2)(B), because each Defendant caused or contributed to the past or present handling, storage, treatment, transportation, or disposal of the Contaminants in the environment of the Site, and because each Defendant either released or otherwise discarded, or caused or contributed to the release or discarding of, the Contaminants in the environment at the Site, and failed to prevent or abate the contamination.

40.     Defendants, and each of them, were persons and/or entities that performed operations and/or handled hazardous waste on or near the Property during the period at least 1977 through 2009

4891-1607-2288.1

which could, or likely would, have caused the type of pollution resulting from the Dry Cleaner. Defendants also had substantial control over the hazardous wastes at the time of disposal or were otherwise actively involved in the waste disposal process. The Contaminants could not, and would not, have been released but for Defendants' negligent conduct.

41.     The Contaminants at the Site are "hazardous waste" within the meaning of RCRA § 1004(5), 42 U.S.C. § 6903(5) and the duly promulgated regulations contained in 40 C.F.R. 261 et seq. because their concentrations and physical and chemical characteristics pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, disposed of, or otherwise managed.

42.     The Contaminants at the Site presents or may present an "imminent and substantial endangerment to human health or the environment" within the meaning of RCRA § 7002 (a)(1)(B), 42 U.S.C. § 6972 (a)(1)(B).

43.     SHP Quito provided notice of the endangerment to the USEPA and CalEPA and Defendants, and waited at least 90 days after receipt of such notice by such recipients before filing this action as required by RCRA § 7002 (b)(2)(A), 42 U.S.C. § 6972 (b) (2) (A).

44.     Neither the USEPA or the CalEPA has commenced or is diligently prosecuting an action under RCRA or CERCLA related to the Site.

45.     SHP Quito has served a copy of this Complaint on the Atty. Gen. of the United States and on the administrator of the USEPA as required by RCRA § 7002 (b)(2)(F), 42 U.S.C. § 6972 (b)(2)(F).

46.     The releases and/or disposal of the Contaminants at the Property have caused an imminent and/or substantial endangerment to health or the environment, by creating a health risk to workers at the Site, including the Property.

47.     Furthermore, hazardous soil vapors have seeped from the subsurface into the air space within the Site, including in structures on the Property that threatened to cause imminent and substantial endangerments and impacts to the ambient air at concentrations in ways potentially harmful to human health. Defendants' failure and/or refusal to take corrective action

4891-1607-2288.1

while the pollution spread put the public at risk.

48.     Plaintiff is entitled to prosecute and maintain this lawsuit, to obtain injunctive relief compelling remediation of the Site, directing Defendants to: take action to address the endangerments which existed; participate in the Site clean-up; pay the costs and expenses incurred by Plaintiff in connection with the Site to date; and, obtain payment of attorneys' fees pursuant to 42 U.S.C. § 6972(a)(1)(B).

49.     Defendants are strictly liable for all costs and expenses resulting from the releases or discharges of the Contaminants at the Site. As a matter of law, there is an identifiable period of time during which Contaminants were released by Defendants at the Property.

50.     SHP Quito is entitled to injunctive relief under RCRA 7002(a), 42 U.S.C. § 6972(a), compelling each Defendant jointly and severally to abate all actual and potential endangerment arising from the presence of the Contaminants at the Site, and to obtain regulatory closure of the Site.

51.     Plaintiff is also entitled to and hereby demands reimbursement from each Defendant for all of the costs necessary to respond to Defendants' pollution and each of their releases or disposals of Contaminants which have injured and continue to injure the Site; Private Attorney General attorneys' fees; and injunctive relief compelling their implementation of remedial action.

**SECOND CAUSE OF ACTION**

**Claim for Cost Recovery Pursuant to CERCLA § 107(a)**

**(Against all Defendants)**

52.     Plaintiff realleges and incorporates by reference all allegations set forth above as though set forth in full herein.

53.     CERCLA § 107(a) 42 U.S.C. § 9607(a), under which Plaintiff brings this cause of action, is CERCLA's response cost recovery provision.

54.     To recover response costs under CERCLA § 107(a), 42 U.S.C. § 9607(a), a Plaintiff must show: (1) that the site on which the hazardous substances are contained is a "facility"; (2) that a "release" or "threatened release" of any "hazardous substance" from the

4891-1607-2288.1

facility has occurred; (3) that such "release" or "threatened release" has caused the plaintiff to incur response costs that were "necessary" and "consistent with the national contingency plan"; and (4) that the defendant is within one of four classes of persons subject to liability provisions of § 107(a).

55.     The Property, the Site and the Dry Cleaner that operated on the Property each qualify as a "facility" within the meaning of CERCLA § 101(9), 42 U.S.C. § 9601(9).

56.     A "release" or threatened "release" of such hazardous substances at and/or from each such facility has occurred within the meaning of CERCLA § 101(22), 42 U.S.C. § 9601(22).

57.     The Contaminants in the environment at the Site are a "hazardous substance" within the meaning of CERCLA § 107(14), 42 U.S.C. § 9601(14).

58.     Among the persons subject to such liability are the current and prior operators of the facility at the time of the disposal of hazardous substance at the implicated facility.

59.     Defendants are liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), because they each used, handled, stored, treated, transported, and/or disposed of, or arranged for others to do so, or exercised substantial influence and control over the use, handling, storage, transport, and/or disposal of the Contaminants at the Property, and because they each owned and/or operated the Dry Cleaner at the Property at a time when the Contaminants were disposed of at the Property. Plaintiff is informed and believes that Defendants stored at one time or another, liquid pollutants, hazardous substances and/or hazardous wastes as part of the operations performed.  Plaintiff is informed and believes that on occasion Defendants' operations resulted in the sudden and accidental leakage so as to discharge and dispose of the liquid and/or solid hazardous substances, hazardous wastes into the soil, soil vapor and groundwater at and beneath the Property and migrated onto surrounding areas.

60.     Plaintiff is informed and believes that Defendants have handled, stored, treated, transported and/or disposed of Contaminants in a manner which caused them to pollute the air, soil, soil vapor and groundwater at the Site which caused an imminent and substantial endangerment to health and/or the environment. The Contaminants leached, migrated, caused

- 14 -
COMPLAINT

4891-1607-2288.1

damage, including the pollution of the air, soil, soil vapor at, beneath and adjacent to the Site and presented a public health and safety hazard and nuisance. The leak and/or sudden and accidental spill of the Contaminants constituted "releases" and/or "threatened releases" of hazardous substances into the environment from a facility within the meaning of § 101(22) of CERCLA, 42 U.S.C. 9601(22).

61.    The releases and threatened releases and disposals as described above have caused Plaintiff to incur necessary costs of response consistent with the national contingency plan.

62.    Each Defendant is liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), to Plaintiff for such necessary costs of response.

63.    Defendants' liability to Plaintiff under CERCLA is strict, joint and several.

### THIRD CAUSE OF ACTION

### Claim for Contribution pursuant to CERCLA § 113(f)

### (Against All Defendants)

64.    Plaintiff realleges and incorporates by reference all allegations set forth above as though set forth in full herein.

65.    Defendants were the persons or entities that owned and/or performed operations and/or handled hazardous substances and/or hazardous wastes on or near the Property during the period from at least 1977 to 2009 which could have, or likely would have, caused the Contaminants that exist at the Site. The Contaminants released could not and would not have occurred but for Defendants' negligent conduct.

66.    Pursuant to § 113(f) of CERCLA, 42 U.S.C. § 9613(f), Plaintiff is entitled to a declaration that Defendants are liable to Plaintiff for contribution in this and any subsequent action brought by Plaintiff to recover past, present, and future costs or damages incurred in response to the release and/or threatened release of hazardous substances at and from the Site, including without limitation, any oversight response, containment, assessment, analytics and/or remedial costs incurred in response to the release or threatened release of hazardous substances at and from the Site.

4891-1607-2288.1

**FOURTH CAUSE OF ACTION**

**Public Nuisance**

**(Against all Defendants)**

67.     Plaintiff realleges and incorporates by reference all allegations set forth above as though set forth in full herein.

68.     California Civil Code § 3479 defines of "nuisance," in relevant part, as "[a]nything which is injurious to health… or is indecent or offensive to the senses, or an obstruction to the free use of the property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal or basin, or any public park, square, street, or highway…".

69.     California Civil Code § 3480 defines the "public nuisance" as one "which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance for damage inflicted upon individuals may be unequal."

70.     Defendants exercise influence and substantial control over the operation of the Dry Cleaner at the Property and through such influence and control caused or contributed to releases, discharges, leaks, spills, disposals, and the discarding of Contaminants into the environment at the Property and allowed such contamination to migrate off Property into the environment throughout the Site and failed to prevent or abate the migration of the Contaminants.

71.     The public nuisance condition and related endangerments to health and the environment at the Site affects the entire surrounding community because it interferes with the free use and enjoyment of publicly-owned property and natural resources.

72.     Defendants have caused, created, maintained, contributed to, and neglected to abate a "public nuisance," as defined in Civil Code §§ 3479 and 3480, namely the actual and potential endangerments to health and the environment created by the Contaminants at the Property and Site.

73.     The purpose of these laws is to set the standard of care or conduct to protect the public and the environment from the harm that may result from the type of improper conduct

- 16 -

4891-1607-2288.1

engaged in by Defendants.

74.     The release and disposal of the Contaminants as alleged herein constitutes a nuisance *per se* because it violates California Water Code §§ 13050(m), 13350, and 13387, California Health and Safety Code §§ 25249.5, 5411, 5411.5, and 117555, California Fish and Game Code § 5650, Civil Code §§ 3479 and 3480, California Code of Civil Procedure § 731, California Penal Code §§ 372, 374.2, and 374.8, the purpose of which are to set a standard of care or conduct to protect the public and the environment from the type of improper activities engaged in by Defendants. Therefore, such improper activities and violations constitute a nuisance *per se*.

75.     Plaintiff is among a class of persons these nuisance laws are intended to protect.

76.     Defendants' conduct in causing and contributing to the contamination of the Site and ability to prevent or abate such contamination and the contamination's migration violated federal, state, local, and common law.

77.     Defendants' conduct in causing and contributing to the contamination at the Property and in failing to prevent or abate such contamination and the migration thereof was undertaken without the consent or knowledge of Plaintiff.

78.     Defendants knew or should have known that their conduct in causing unabated release of Contaminants at the Property and in failing to prevent or abate such contamination and the migration thereof would result in the nuisance complained of.

79.     Plaintiff has suffered injury and damages as a direct and proximate result of the Contaminants released at the Property and Site because it has been required to incur necessary response costs to address the contamination for which it has no liability, and because the Contaminants at the Property prevented it from developing the Property for public benefit.

80.     The public nuisance at the Site is a continuing nuisance that can be abated at a reasonable cost by reasonable means, and Plaintiff has demanded that the Defendants abate the nuisance and hereby reiterate that demand.

81.     Defendants are strictly, jointly and severally liable for abatement of the public nuisance at the Site and for the harm suffered and costs incurred because of such nuisance.

4891-1607-2288.1

82.     Plaintiff is entitled to injunctive relief compelling Defendants to jointly and severally, promptly and competently take such action as may be necessary to abate the public nuisance at the Site and to obtain regulatory closure of the Site. Plaintiff is also entitled to be reimbursed by Defendants for the harm suffered and will suffer and the cost it has incurred and will incur because of such nuisance.

**FIFTH CAUSE OF ACTION**

**Private Nuisance**

**(Against all Defendants)**

83.     Plaintiff realleges and incorporates by reference all allegations set forth above as though set forth in full herein.

84.     Defendants caused or contributed to the alleged past or present handling, storage, treatment, transportation, or disposal of Contaminants in the environment in, at, from, and around the Site because each Defendant released or otherwise discarded those Contaminants during their dry cleaning operations or controlled the equipment or Property from which those contaminants were released or otherwise discarded, but failed to prevent or abate such contamination.

85.     Defendants' acts or omissions contributed to or caused the discharge and release of Contaminants in, at, from, and around the Property, which have interfered with Plaintiff's free use and enjoyment of the Property.

86.     Defendants have failed to comply with federal, state, local, and common law.

87.     The continuing nuisance complained of is abatable and Plaintiff has demanded that Defendants abate the continuing nuisance complained of, and hereby reiterates that demand.

88.     Defendants are strictly, jointly and severally liable for abatement of the alleged continuing nuisance.

89.     As a direct and proximate result of the acts, omissions, and conduct of Defendants, Plaintiff has suffered and continues to suffer damages as alleged herein. The above-described acts, omissions, and conduct of Defendants are and have been without the consent, knowledge, against the will, and in violation of the rights of Plaintiff.

4891-1607-2288.1

90.     Plaintiff is entitled to injunctive relief restraining and enjoining Defendants and requiring each of them, jointly and severally, promptly and competently to take such action as may be necessary to abate the continuing private nuisance and to reimburse Plaintiff for all past and future response costs and other damages.

**SIXTH CAUSE OF ACTION**

**Trespass**

**(Against all Defendants)**

91.     Plaintiff realleges and incorporates by reference all allegations set forth above as though set forth herein.

92.     Trespass under California law is the intentional, knowing, reckless, or negligent entry onto another's property without permission.

93.     Plaintiff owns and controls the Property.

94.     Through their ownership and/or operation of the Dry Cleaner at the Property, Defendants intentionally, knowingly, recklessly, or negligently caused the Contaminants to enter upon and remain on the Property.

95.     Plaintiff did not give Defendants permission to engage in the conduct that caused or contributed to the Contaminants entering upon and remaining on Plaintiff's Property.

96.     Defendants knew or should have known their conduct in causing the Contaminants to enter and remain on Plaintiff's Property would result in a trespass.

97.     The trespass on the Property is a continuing trespass that can be abated at a reasonable cost by reasonable means, and Plaintiff has demanded that Defendants abate the trespass and hereby reiterates that demand.

98.     Defendants' conduct in causing the Contaminants to enter and remain on the Property and thereby creating the trespass complained of, was a substantial factor in causing harm to Plaintiff, including lost profits, costly delay in its redevelopment of the Site, and the incurrence of response costs and other damages.

99.     Plaintiff has no adequate remedy at law to redress the injuries that it has suffered

4891-1607-2288.1

and that it will suffer because of the trespass to its Property.  Injunctive relief compelling

Defendants to promptly remove the Contaminants from Plaintiff's Property is thus appropriate.

100.    Defendants are jointly and severally liable for abatement of the trespass, for the

damages caused to Plaintiff by the trespass, and for the cost incurred by and to be incurred by

Plaintiff in responding to the trespass.

101.    Plaintiff is entitled to injunctive relief compelling Defendants to jointly and

severally, promptly and completely take such action as may be necessary to abate the trespass, to

reimburse the Plaintiff for the costs it has incurred and will incur to respond to the trespass, and to

compensate Plaintiff for the damages it has suffered and will suffer as a result of Defendants'

trespass.

**SEVENTH CAUSE OF ACTION**

**Breach of Contract**

**(Against all Defendants)**

102.    Plaintiff realleges and incorporates by reference all allegations set forth above as if

though set forth herein.

103.    Defendants and Plaintiff were parties to the 2000 Lease Agreement that required

Defendants, *inter alia,* to be responsible for any environmental contamination resulting from its

activities, and to indemnify Plaintiff for any damages resulting from its actions or inactions.

104.    Defendants breached the 2000 Lease Agreement in the following ways.  First, the

2000 Lease Agreement includes the following indemnification provision:

> 13.4 Indemnification of Owner. **Tenant will indemnify Owner, defend and save harmless from and against any and all claims, motions, damages, liability and expense in connection with loss of life, personal injury and/or damage to property or any other claim, action, damages, liability or expense, including attorney's fees arising from or out of any occurrence in, upon or at the leased premises, or the occupancy or use by Tenant of the Leased Premises or any part thereof, or occasioned wholly or in part by any act or omission of Tenant**, its agents, contractors, employees, servants, lessees or concessionaires. In case Owner shall be made a party to any litigation commenced by or against Tenant, Tenant shall hold Owner harmless and shall pay all costs, expenses and

- 20 -

COMPLAINT

4891-1607-2288.1

reasonable attorney's fees incurred or paid by Owner in connection with such litigation. (emphasis added)

Defendants violated provision 13.4 by failing to indemnify Plaintiff for any and all claims, actions, damages, liability and expense in connection with the damage to the Property as occasioned wholly in part by Defendants' acts or admission.

105.    Second, the 2000 Lease Agreement included the following provision regarding the creation of a nuisance on the Property:

17.1    Waste or Nuisance.  **Tenant shall not commit or suffer to be committed any waste upon the Leased Premises or any nuisance** or other act or thing which may be located, or in the Shopping Center, or **which may disturb the quiet enjoyment of any person within five hundred feet of the boundaries of the Shopping Center.**

17.2    Governmental Regulations. **Tenant shall, at Tenant's sole cost and expense, comply with all of the requirements of all city, county, municipal, state, federal and other applicable governmental authorities** now in force, or which may hereafter be in force, pertaining to said premises, including the installation of additional facilities as required for the conduct and continuance of tenant's business, **and shall faithfully observe in the use of the premises all municipal and county ordinances and state and federal statutes now in force or which may hereafter be in force**. (emphasis added)

The Defendants breached provision 17.1 by engaging in activities that resulted in the release of Contaminants that constituted "waste upon the Leased Premises" as well as a nuisance that disturbed the quiet enjoyment of any person within five hundred feet of the boundaries of the Shopping Center.  Defendants breached provision 17.2 by failing to observe the municipal and county ordinances and state and federal statutes the prohibit activities that result in the release of environmental Contaminants.

106.    Third, the 2000 Lease Agreement required Defendants to assume responsibility for the expense of the cleanup of the Contaminants resulting from the operation of Defendants' Dry Cleaner:

26.13    Hazardous Materials.
(a)    Tenant, without the prior written consent of Owner, which consent Owner may give or withhold in its sole discretion, agrees not to use, treat, store, generate, emit, or dispose of and not to suffer or permit anyone

- 21 -

4891-1607-2288.1

else to use, treat, store, generate, emit or dispose of, whether temporarily or permanently, any Hazardous Materials (as hereinafter defined) at home alone, or the need the leased premises…. If Tenant or any Tenant party breaches the obligations stated in the preceding sentences or the presence of Hazardous Materials on the Leased Premises caused or permitted by Tenant's results in contamination of the leased premises, the shopping center or any adjacent property, then Tenant shall indemnify, defend and hold harmless Owner from and against any and all claims, judgments, actions, damages, penalties, fines, forfeitures, costs, expenses, liabilities or losses (including, without limitation, diminish and in value of the premises, the shopping center and/or adjacent property, damages for loss for restriction on use of rentable or usable space of any amenity of the premises, the shopping center and/or adjacent property, damages arising from any adverse impact on marketing of the premises, the shopping center and/or adjacent property, and sums paid in settlement with Plaintiffs, attorney's fees, consultant food and expert fees and court cost (s) which arise during or after the lease term or any extension thereof, as result of such breach…. As used herein, "Hazardous Materials" shall include, but not be limited to, substances defined as "extremely hazardous substances," "hazardous material," "hazardous waste," or "infectious waste," "toxic waste" or "toxic substances", as defined in all applicable federal, state, and local laws, regulations or ordinances (collectively, "Hazardous Materials Laws").

***

(b) … Notwithstanding any consent given, Tenant shall be solely responsible for and shall indemnify, defend, and hold Owner, its officers, directors, employees, and agents harmless from and against any and all losses, costs, damages, claims, and liabilities, including attorneys' fees and costs arising out of or in connection with a removal, clean-up, remediation, and restoration work or materials required to return the Leased Premises to its condition existing prior to contamination of the Leased Premises by Hazardous Material, including any so called state, federal or local "super fund" lien related to the "clean up" of a "Hazardous Material" in, over, on, under, through or about the Leased Premises.

Defendants breached provision 26.13 by using, treating, storing, generating, emitting or disposing of the Contaminants that constituted "Hazardous Materials" defined as "'extremely hazardous substances,' 'hazardous material,' 'hazardous waste,' or 'infectious waste,' 'toxic waste' or 'toxic substances', as defined in all applicable federal, state, and local laws, regulations or ordinances. Defendants further breached provision 26.13 be failing to assume responsibility for the "losses, costs, damages, claims, and liabilities" arising out of or in connection with clean-up of the Contaminants performed by Plaintiff.

4891-1607-2288.1

107.    Plaintiff either performed or was excused from performing all of its obligations under the 2000 Lease Agreement.

108.    Plaintiff suffered damages as a result of Defendants' breach of the 2000 Lease Agreement.

109.    Plaintiff is entitled to compensatory damages resulting from Defendants' breach of the 2000 Lease Agreement.

**EIGHTH CAUSE OF ACTION**

**Negligence**

**(Against all Defendants)**

110.    Plaintiff realleges and incorporates by reference all allegations set forth above as though set forth herein.

111.    Defendants controlled the Dry Cleaner and had a duty to use reasonable care appropriate to the circumstances to prevent harm or the unreasonable risk of harm to Plaintiff, to the public at large, and to the environment.

112.    Each Defendant controlled the Dry Cleaner and had a duty to use reasonable care in the management and control of the business and in their use, handling, storage, transfer, transport, and disposing of contaminants so as to avoid causing the release of the Contaminants at the Property and Site.

113.    From the date that each Defendant first knew or should have known of the Contaminants at the Property they have had an ongoing duty to investigate and remediate the Contaminants.

114.    PCE and the Contaminants are inherently dangerous products and operating a dry-cleaning business and handling, using, storing, transferring, transporting, and disposing of PCE and the Contaminants is an inherently dangerous activity in itself so that the hazard persists despite the exercise of ordinary care; the risk of harm is so great that the failure to use extreme caution is negligence.

115.    Defendants owed these duties to Plaintiff, the public, and the environment.

COMPLAINT

4891-1607-2288.1

116.    Defendants breached these duties by engaging in conduct which fell below the standard of care established by law for the protection of others against unreasonable risk of harm, and by failing to exercise due care commensurate with the risk posed by their conduct taking into consideration all relevant circumstances.

117.    Defendants breached these duties by failing to exercise due care in their management, operation, control of the Dry Cleaner at the Property so as to avoid causing or contributing to the release of Contaminants at the Site.

118.    Defendants breached these duties by failing to exercise due care in their use, handling, storage, transfer, transport, disposal, and releases of the Contaminants at the Property so as to avoid causing or contributing to the release of Contaminants at the Site.

119.    Defendants breached their duties by failing to exercise due care in their practices, procedures, abatements, and use of the equipment at the Property so as to avoid causing or contributing to the release of Contaminants at the Site.

120.    Defendants breached and continue to breach these duties by failing and continuing to fail to exercise due care in their response to the discharge of Contaminants at the Property, including in their continuing failure to promptly and fully cleanup such releases and prevent such releases from continuing to spread in the environment.

121.    Defendants breached and continue to breach these duties by failing to remediate the Contaminants at the Site or to obtain regulatory closure of the Site.

122.    Defendants breached and continue to breach these duties by failing to reimburse Plaintiff for the costs associated with Plaintiff's investigation and remediation of the discharged Contaminants.

123.    These breaches were and are negligent, reckless, and careless.

124.    Defendants' negligence as described above directly and proximately caused and was a factor in causing Plaintiff to suffer harm, including damage to its Property, lost profits, costly delay in its redevelopment of the Property, and the incurrence of response costs and other damages.

4891-1607-2288.1

125. The Site ordinarily would not have become contaminated, and Plaintiff ordinarily would not have suffered the resulting harm, absent from some form of negligence.

126. The release of Contaminants at the Site was caused by things within the control of Defendants, namely the Dry Cleaner, the equipment thereon, and the release of Contaminants.

127. Plaintiff did not cause or contribute to the contamination at and emanating from the Property or to events that led to such contamination.

128. Therefore, under the doctrine of *res ipsa loquitor,* it is presumed that Defendants were negligent and that their negligence was a substantial factor in causing the contamination and Plaintiff's harm as alleged herein.

129. The purpose of these laws is to set a standard of care and conduct to protect the public and the environment from the harm that may result from a type of improper conduct engaged in by Defendants.

130. Plaintiff is among the class of people and entities these laws were intended to protect.

131. Defendants' conduct as described herein is thus negligent *per se*.

132. Defendants' conduct as described herein was without Plaintiff's consent.

133. Defendants are jointly and severally liable for the harm they caused to Plaintiff, the public and the environment by their negligence. Plaintiff is entitled to recover from Defendants it's consequential, incidental, and general damages to be proven at trial to compensate Plaintiff for the harm it is suffered and will suffer because of Defendants' negligence.

**NINTH CAUSE OF ACTION**

**Ultrahazardous Activity**

**(Against all Defendants)**

134. Plaintiff realleges and incorporates by reference the allegations set forth above as though set forth in full herein.

135. Defendants engaged in the ultrahazardous activity of operating a dry-cleaning business.

COMPLAINT

4891-1607-2288.1

136.    This activity presents a high degree of risk of harm to property, people, and the environment through the discharge of PCE and other Contaminants.

137.    The likelihood of a harmful result is great.

138.    The risk of such harm cannot be eliminated by the exercise of reasonable care.

139.    The operation of a dry cleaner is not a matter of common usage.

140.    The Property within the Site was harmed by the release of Contaminants as described herein and this harm is the kind of harm that would be anticipated as a result of the risk created by the ultrahazardous activity described above.

141.    Defendants' conduct in engaging in this ultrahazardous activity was the direct and proximate cause of the substantial factor in causing such harm.

142.    Defendants are strictly, jointly, and severally liable for such harm.

143.    Plaintiff is entitled to recover from the Defendants it's consequential, incidental, and general damages to be proven at trial compensate Plaintiff for the harm it has suffered and will suffer because of Defendants' ultrahazardous activity, including damage to its Property, lost profits, costly delay in the development of the Property, and the incurrence of response costs and other damages.

### TENTH CAUSE OF ACTION

### Statutory Indemnity under HSAA

### (Against all Defendants)

144.    Plaintiff realleges and incorporates by reference the allegations set forth above as though set forth in full herein.

145.    The Carpenter-Presley-Tanner Hazardous Substance Account Act ("HSAA"), Health & Safety Code § 25300, *et seq.* was enacted to encourage expedient cleanup of "hazardous substances" in the environment. In furthering this goal the California legislature included the statutory right of contribution or indemnity for parties to incur costs to address contaminated properties from those parties who are responsible for the contamination.

146.    Health & Safety code § 25363(d) provides that "[a]ny person who has incurred

- 26 -

4891-1607-2288.1

removal or remedial action costs in accordance with (HSAA) may seek contribution or indemnity from any person who is liable pursuant to (HSAA)."

147.    A "liable person" is defined in Health & Safety Code § 25323.5(a) as "those persons described in § 107(a) of CERCLA (40 2U. S. C. § 9607(a)."

148.     "Those persons described in § 107 (a)" of CERCLA include, among others, the current owner or operator of the facility and any person who at the time of disposal of any hazardous substance owned or operated the facility at which hazardous substances were disposed of. 42 U.S.C. § 9607(a).

149.    Each defendant is a "liable person" as defined in Health & Safety Code §25323.5(a) and 42 U.S.C. § 9607(a).

150.    Plaintiff is not a "liable person" because it never owned the dry-cleaning business and had no involvement with the operations of the dry-cleaning business that caused the contamination.

151.    Plaintiff is informed and believe and thereon allege Defendants also violated: California Civil Code §§ 3479, 3480 and 3481; CERCLA, 42 U.S.C. § 9607, et seq.; RCRA, 42 U.S.C. S 6972, et seq.; California Water Code (Dickey Act (Water Code §13010, et seq., repealed 1969); Porter-Cologne Act (Water Code § 13020, et seq.), by causing and/or permitting the discharge or release of Contaminants into the environment; California Water Code § 13050 (m)(1), 13265(c) and (d); and 13350(b); and, California Fish & Game Code § 2560. These resulted in violations of law which in turn support liability under Plaintiff's HSAA claim.

152.    There have been releases or threatened releases of hazardous substances into the environment of the Site. As a direct and proximate result of Defendants' conduct that caused and contributed to the contamination at the Site, Plaintiff has incurred and will continue to incur removal and/or remedial action costs in accordance with HSAA.

153.    Plaintiff has given DTSC notice of the commencement of this action as required by Health & Safety Code § 25363(d).

154.    Defendants are Responsible Persons as defined by Health and Safety Code §

COMPLAINT

4891-1607-2288.1

25323.5 and 42 U.S.C. § 9607(a), and therefore Plaintiff is entitled to cost recovery and contribution from Defendants pursuant to California Health and Safety Code § 25363, including but not limited to all present and future costs of pollution investigation, remediation and attorneys' fees.

155.    As a direct and proximate result of Defendants' conduct as alleged herein and due to the strict liability imposed by HSAA, Plaintiff is entitled to full indemnity from Defendants under Health & Safety Code § 25363(d) for all removal costs, remedial action costs, and response costs, including attorneys' fees it has incurred or will incur in the future.

## ELEVENTH CAUSE OF ACTION

### Declaratory Relief

### (Against all Defendants)

156.    Plaintiff realleges and incorporates by reference the allegations set forth above as though set forth in full herein.

157.    An actual dispute and controversy has arisen and now exists among the parties to this action concerning the respective rights and duties and that Plaintiff contends and Defendants deny the Defendants are responsible for the Contaminants released at the Site, and are obligated to pay for the costs of the cleanup, for the harm caused or to be caused to Plaintiff by the Contaminants and for the costs incurred and to be incurred by Plaintiff because of the released Contaminants.

158.    Plaintiff has incurred and will incur costs, including but not limited to investigatory, remedial, and removal expenses, as well as attorneys' fees and interest in the future as a direct and proximate result of the Contaminants released at the Site.

159.    A judicial declaration is necessary and appropriate under the present circumstances so that the Plaintiff may ascertain its rights and duties.

160.    Under state and federal law, including the declaratory judgment act, 28 U.S.C. § 2201, and CERCLA §113(g)(2), 42 U.S.C. § 9613(g)(2), Plaintiff is entitled to a judicial determination of the parties rights and duties with respect to such dispute and controversy,

4891-1607-2288.1

including a declaration that Defendants are liable to Plaintiff for all harm suffered and costs incurred and to be incurred by Plaintiff as a result of the Contaminants at the Site.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered in its favor as follows:

1. For compensatory damages for Defendants' breach of the 2000 Lease Agreement in an amount to be proven at trial;

2. For indemnity and other relief under the 2000 Lease Agreement for all costs, expenses, liabilities, or losses, including diminution of the value of the premises, loss from restriction on use, and adverse impacts on marketing of the premises, suffered by Plaintiff due to the release of Contaminants caused by Defendants."

3. For an order requiring Defendants to reimburse Plaintiff for its investigation and remediation of the Contaminants at the Site;

4. For a declaration that Defendants are liable to Plaintiff for indemnity under HSAA § 25363(d) for all past, present, and future response costs and other costs which have been or may be incurred by Plaintiff at the Site in connection with the Contaminants;

5. For a declaration under CERCLA § 113(g)(2), 42 U.S.C. §9613(g)(2), that Defendants are liable to Plaintiff for all past, present, and future necessary costs of response consistent with the national contingency plan;

6. For a declaration that Defendants must indemnify Plaintiff for all costs incurred as a result of the release of the Contaminants caused by Defendants;

7. For compensatory and consequential damages to be used to reimburse Plaintiff for its investigation and remediation of the Site;

8. For compensatory and consequential damages resulting from delayed completion of the residential and commercial construction project due to the release of Contaminants caused by Defendants;

9. For an award to Plaintiff for its costs of litigation, including attorneys' fees and expert witness' fees, pursuant to, without limitation, RCRA § 7002(e), 42 U.S.C. § 6972(e) and

4891-1607-2288.1

1    California Code of Civil Procedure § 1021.5;

2    10. For damages from Defendants to compensate Plaintiff for the costs, including attorneys'

3        fees it has incurred and will incur in response, removal, or remedial efforts, the exact

4        amount of which will be ascertained according to proof;

5    11. For prejudgment interest and post-judgment interest;

6    12. For all costs of suit herein;

7    13. For such other and further relief as this Court deems just and proper.

8

9                                    **JURY DEMAND**

10           Plaintiff hereby demands a trial by jury on all issues so triable, pursuant to Federal Rules of

11   Civil Procedure 38.

12

13   Dated: May 1, 2023                          Respectfully submitted,

14                                               **NIXON PEABODY LLP**

15

16                                               By: */s/ Dawn N. Valentine*

17                                               ALISON B. TORBITT
                                                 DAWN N. VALENTINE
18                                               STRATTON CONSTANTINIDES

19                                               Attorneys for Plaintiff
                                                 *SHP Quito Village, LLC*

20

21

22

23

24

25

26

27

28

                                          - 30 -
                                        COMPLAINT

4891-1607-2288.1